IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARBARA SOLEAU, )
 )
 Plaintiff, )
 )  Civil Action No.: 09 C 3582
v. )
 )  Suzanne B. Conlon, Judge
ILLINOIS DEPARTMENT OF )
TRANSPORTATION, )
 )
 Defendant. )
 )
 )

## MEMORANDUM OPINION AND ORDER

Barbara Soleau sues her employer the Illinois Department of Transportation ("IDOT") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Soleau alleges IDOT subjected her to a hostile work environment and retaliated against her for complaining about discrimination.[1] IDOT moves for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. The movant must submit a statement of material facts, not to exceed 80 short numbered paragraphs; each paragraph must cite affidavits, the record, and other supporting materials. Local Rule 56.1(a)(3). The opposing party must respond to each

---

[1] Soleau alleges a disparate treatment claim, but abandons the claim in her response.

numbered paragraph in the movant's statement including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials. Local Rule 56.1(b)(3). Failure to comply with this rule results in admission of the facts. Local Rule 56.1(b)(3)(c); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The opposing party may also submit a statement of supplemental material facts, not to exceed 40 short numbered paragraphs, that require summary judgment denial. Local Rule 56.1(b)(3)(c).

Rule 56.1 requires *short* paragraphs (one or two individual allegations), and is not a forum for factual or legal argument. *Malec v. Sanford*, 191 F.R.D. 581, 583, 585 (N.D. Ill. 2000) (Castillo, J.). The parties repeatedly violate the rule with lengthy paragraphs and argument. The court considers the parties' submissions only to the extent they comply with Rule 56.1's requirements.

## II.   Background

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. IDOT maintains the state's highways. Def. Facts. ¶ 5. To service the roads, IDOT employs highway maintainers at maintenance facilities or "yards" throughout the state. *Id.* During the winter season (from early November to late March), IDOT employs full-time temporary highway maintainers ("snowbirds") to assist with snow and ice removal. *Id.* ¶ 6. Soleau is a snowbird; she has worked at IDOT's Edens yard every winter from 2003 to the present. *Id.* ¶ 7. She is the only female employee at the Edens yard. Pl. Facts ¶ 1.

Raymond Gennetti was a "lead worker" in the Edens yard during the 2006/2007 winter season. Def. Facts ¶ 19. During this time period, Gennetti "asked out" Soleau weekly, and told her she should get drinks with him, stay at his house, and have breakfast with him. Pl. Facts ¶ 3.

2

A couple times a week, Gennetti brushed his body against Soleau; he made sexual gestures toward her with his tongue and leered at her. *Id.* ¶ 4. He requested Soleau's assignment to his truck. *Id.* ¶ 5. On a weekly basis, when Soleau cleaned the yard bathroom, Gennetti entered the restroom, opened his pants while facing her, and cornered her for a few seconds during which time he would try to expose himself until she was able to run out of the bathroom. *Id.* ¶ 7. Gennetti waited for Soleau in the yard parking lot and followed her car while making sexual gestures and sounds. *Id.* ¶ 8. Soleau repeatedly told Gennetti to stop the conduct; she initially did not report Gennetti because she was afraid she would not be believed and would lose her job. *Id.* ¶¶ 9-10. Gennetti disputes the comments and conduct. Def. Facts ¶ 28.

On Friday, March 23, 2007, Gennetti made sexual innuendos to Soleau, wagged his tongue at her, and asked her to have a drink with him. *Id.* ¶ 20. Snowbird Larry Wilson witnessed the conduct. *Id.* Soleau reported Gennetti's conduct and submitted a written statement that day. Def. Facts ¶ 24; Pl. Facts ¶ 11; Def. Ex. A(6). On Monday, March 26, 2007, IDOT arranged to transfer Gennetti to another IDOT facility effective the next day. Def. Facts ¶ 26.

Pursuant to its internal procedure, IDOT's Bureau of Civil Rights investigated Soleau's complaint. *Id.* ¶¶ 15, 27-29. On April 23, 2007, the investigators sent a summary report to the bureau chief. *Id.* ¶¶ 15, 31. On May 2, 2007, after reviewing the investigative report and receiving an oral report from the bureau chief, IDOT's Civil Rights Committee ("the committee") drafted a recommendation to IDOT's secretary. *Id.* ¶ 32 and Pl. Ex.D(1). The recommendation recounted only the allegations corroborated by Wilson. Def. Ex.D(1). The committee found Gennetti violated IDOT's sexual harassment policy by making inappropriate and unwanted gestures and comments to Soleau, and recommended Gennetti's permanent

3

transfer from the Edens yard and a 15-day suspension without pay. Def. Facts ¶ 32 and Ex. D(1). The committee did not send the recommendation to the secretary because Soleau filed an Illinois Department of Human Rights ("IDHR") charge on April 4, 2007. Def. Facts ¶¶ 33, 39. The committee's unwritten procedure is to defer submission of a recommended decision to the secretary until after receiving the IDHR decision to avoid conflicting results. *Id.* ¶ 33.

In November 2007, Soleau returned to IDOT for the 2007/2008 winter season; her complaint remained pending. Pl. Facts ¶ 21. During orientation, Soleau was summoned to meet with IDOT officials; she was told Gennetti would be working with her in the Edens yard. *Id.*; Def. Facts ¶¶ 44-45. A few hours later, Personnel Services Manager Giovanni Fulgenzi informed Soleau that Gennetti was reassigned to a different yard. Pl. Facts ¶ 21; Def. Facts ¶ 45.

On March 13, 2008, the committee submitted its recommendation to IDOT's secretary, who approved the recommendation. Def. Facts ¶ 35 and Ex. D(3). When Fulgenzi was in the process of drafting charges against Gennetti, Gennetti announced his intention to retire within a month. *Id.* ¶ 37. Gennetti retired in June 2008; he was never reprimanded or suspended, and his pay was never docked with respect to Soleau's complaint. Pl. Facts ¶ 18; Def. Resp. ¶ 18.

Soleau returned for the 2008/2009 season. On January 28, 2009, snowbird Eugene Reid (who had been an Edens yard employee with Gennetti and Soleau during the 2006/2007 season) told Soleau that during the layover for her upcoming trip to Poland, she could "'find a man on the side or near the restroom and fuck him.'" Pl. Facts ¶ 26. He accompanied the comment with hand and leg sexual gestures. *Id.* Soleau understood the comment as a reference to Gennetti's conduct in the Edens yard restroom. *Id.* ¶ 27. Soleau reported the incident to supervisors on

4

February 3, 2009. *Id.* Reid and Soleau were placed in separate groups for the remainder of the season. Def. Facts ¶ 51.

The complaint was investigated; Reid, Soleau, and a witness relayed slightly varying versions of the vulgarity; only Soleau's version included reference to a restroom. *Id.* ¶¶ 53-54. On March 31, 2009, investigators submitted a summary report to the bureau chief. *Id.* ¶ 55 and Ex. F(1). On June 3, 2009, after reviewing the investigative report and receiving an oral report from the bureau chief, the committee drafted a recommendation to IDOT's secretary. *Id.* ¶ 56 and Ex. D(4). The committee found the complaint untimely, and that Soleau did not clearly express her objection to what was characterized as an "'off-color'" joke of a "'questionable nature.'" Def. Facts ¶ 56; Pl. Facts ¶ 32. The committee recommended that Soleau and Reid receive sexual harassment training, and that Reid receive addition counseling for his inappropriate behavior. Def. Facts ¶ 56 and Ex. D(4); Pl. Facts ¶ 33. The secretary approved the recommended decision. Def. Facts ¶ 56. Soleau and Reid received sexual harassment training during the snowbird orientation the next season, in November 2009. *Id.* ¶ 57. They were placed in the same work group for the 2009/2010 season. *Id.* ¶ 67. Soleau twice requested a transfer; the requests were denied. *Id.* ¶¶ 68-69. After Soleau's attorney contacted IDOT, Soleau and Reid were separated. *Id.* ¶¶ 70-71.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is warranted only if the pleadings, discovery, and disclosure materials on file, and any affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cracco*, 559 F.3d at 633. IDOT

has the initial burden of demonstrating it is entitled to summary judgment. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). If IDOT meets its burden, Soleau must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Kramer*, 384 F.3d at 861. The court construes all facts and draws all reasonable inferences in the light most favorable to Soleau. *Cracco*, 559 F.3d at 633. A genuine issue of material fact exists if the evidence is sufficient to support a reasonable jury verdict in Soleau's favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001).

## II. Hostile Work Environment

To prove a hostile work environment claim, Soleau must establish she was subjected to unwelcome sexual conduct; the conduct was severe or pervasive enough to create a hostile work environment; the conduct was directed at her because of her sex; and there is a basis for employer liability. *Roby v. CWI, Inc.*, 579 F.3d 779, 784 (7th Cir. 2009). Harassment must be subjectively and objectively offensive. *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008).

IDOT concedes Gennetti's alleged conduct was severe and pervasive, but contends Reid's single, inappropriate comment does not amount to a hostile work environment. Instances of harassment are not analyzed separately by harasser or incident. *Id.* at 983-84; *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1044-45 (7th Cir. 2000). Workplace conduct is judged by the totality of the circumstances. *Lapka*, 517 F.3d at 983-84. Viewing the evidence in the light most favorable to Soleau, and drawing all inferences in her favor, she was subjected to horrific, prolonged harassment by Gennetti during the 2006/2007 winter season. Pl. Facts ¶¶ 3-5, 7-10, 20. One of his alleged recurring antics – the one most bothersome to Soleau – was to trap her in the restroom she was trying to clean while opening his pants and attempting to expose himself to

6

her. *Id.* ¶¶ 6-7. Soleau understood the comment by Reid (who worked in the same Edens yard with Soleau and Gennetti during the 2006/2007 season) to "'find a man on the side or near the restroom and fuck him'" during the flight layover and accompanying sexual demonstration to be a reference to Gennetti's alleged conduct in the Edens yard restroom. *Id.* ¶¶ 26-27. Viewing the evidence in Soleau's favor, there are genuine issues of material fact as to the severity and pervasiveness of the sexual harassment beginning with Gennetti's alleged misconduct and culminating in Reid's undisputed vulgarity.

IDOT contends that even if Soleau was subjected to severe and pervasive unwelcome sexual conduct, there is no basis for liability. IDOT could be strictly liable for Gennetti and Reid's conduct if they were supervisors (subject to the possible affirmative defense that Soleau suffered no tangible employment action). *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477-78 (7th Cir. 2004). A supervisor has the power to directly affect the terms and conditions of Soleau's employment. *Id.* at 478. It is undisputed that lead workers and snowbirds, Gennetti and Reid's respective positions, have no authority to hire, fire, promote, demote, transfer, or discipline any other IDOT employee. Def. Facts ¶ 10; Resp. ¶ 10. Soleau presents no evidence Gennetti and Reid were supervisors; IDOT cannot be held strictly liable for their actions.

Nevertheless, IDOT may be liable for a hostile work environment created by a co-worker if it was negligent in discovering or remedying the harassment. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505-06 (7th Cir. 2004); *see also Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000) (an employer may avoid liability if it takes prompt and appropriate corrective action reasonably likely to prevent harassment from recurring). IDOT argues its corrective action insulates it from liability as a matter of law. According to IDOT, it promptly

responded to Soleau's complaints by separating her from Gennetti and Reid, and it is undisputed she did not experience further harassment. Def. Facts ¶¶ 26, 42, 50-51, 60, 74.

There are genuine issues of material fact about the reasonableness of IDOT's actions in separating Soleau from her alleged harassers. Gennetti was not transferred to a different yard until two business days after Soleau complained about his conduct. *Id.* ¶ 26. When she returned for the 2007/2008 season, she was initially told Gennetti would be working with her in the Edens yard. *Id.* ¶¶ 44-45; Pl. Facts ¶ 21. Although Reid and Soleau were separated during the 2008/2009 season after Soleau's complaint, IDOT placed them in the same group for the 2009/2010 season and twice denied Soleau's transfer requests. Def. Facts ¶¶ 51, 67-69. The transfer request was honored only after Soleau's attorney contacted IDOT – weeks into the season. *Id.* ¶¶ 70-71. The mere fact that neither Gennetti nor Reid continued to harass Soleau after she complained does not necessarily mean that IDOT's response was adequate as a matter of law. *See Smith v. Sheahan*, 189 F.3d 529, 535 (7th Cir. 1999) ("[j]ust as an employer may escape liability even if harassment recurs despite its best efforts, so it can also be liable if the harassment fortuitously stops, but a jury deems its response to have fallen below the level of due care").

IDOT investigated the complaint about Gennetti, recommended discipline, but halted the internal disciplinary process for almost a year, and never executed the discipline. Def. Facts ¶¶ 33, 37; Pl. Facts ¶ 18; Def. Resp. ¶ 18. As for Reid's recommended discipline, the record reflects he received the same annual sexual harassment training as the other yard workers, not the additional counseling he was supposed to receive. Pl. Facts ¶ 33. IDOT's response to Soleau's complaints does not, as a matter of law, amount to appropriate corrective action reasonably likely

to prevent the recurrence of harassment. Summary judgment on the hostile work environment claim is not warranted.

## III. Retaliation

Soleau may prove a retaliation claim either directly or indirectly. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). She proceeds under the direct method. To establish retaliation under the direct method, she must show she engaged in statutorily protected activity, suffered a materially adverse employment action, and there is a causal connection between the protected activity and adverse action. *Id.*

IDOT argues Soleau did not suffer an adverse employment action. An employment action must be materially adverse, not a mere inconvenience or alteration of job responsibilities. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Adverse employment actions include termination of employment, a demotion evidenced by a decrease in salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. *Id.* at 465-66. It is undisputed that since complaining about harassment, Soleau has been rehired every season; her salary has not decreased; and she has not been disciplined, suspended, or forced to take time off. Def. Facts ¶ 78; Pl. Resp. ¶ 78.

Soleau contends IDOT retaliated against her by withholding the committee's disciplinary recommendation for Gennetti after she filed an administrative charge. She did not plead this theory of retaliation in her complaint, and is precluded from adding a new theory of relief in response to summary judgment. *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 664 (7th Cir. 1998); *Fagbemi v. City of Chicago*, No. 08 C 3736, 2010 WL 1193809, at *15 (N.D. Ill. Mar. 19, 2010) (Kendall, J.). Soleau fails to establish a genuine issue of material fact that the stalled

9

recommendation amounts to an adverse employment action. There is no evidence the decision to hold the disciplinary recommendation in abeyance pending Soleau's administrative charge impacted the terms of Soleau's employment, her benefits, or job responsibilities. Summary judgment in IDOT's favor on the retaliation claim is appropriate.

## CONCLUSION

IDOT's summary judgment motion is granted in part and denied in part. Summary judgment is not warranted on the hostile work environment claim because there are genuine issues of material fact as to the severity and pervasiveness of the alleged sexual harassment and the appropriateness of IDOT's response. IDOT is entitled to summary judgment on the retaliation claim because Soleau fails to present a genuine issue of material fact that she suffered an adverse employment action.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

June 4, 2010