IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARBARA SOLEAU, )
)
Plaintiff, )
) Civil Action No.: 09 C 3582
v. )
) Suzanne B. Conlon, Judge
ILLINOIS DEPARTMENT OF )
TRANSPORTATION, )
)
Defendant. )
)

## AMENDED MEMORANDUM OPINION AND ORDER

Barbara Soleau sued the Illinois Department of Transportation ("IDOT") for a hostile work environment, disparate treatment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* At summary judgment, Soleau abandoned her disparate treatment claim and the court entered judgment for IDOT on the retaliation claim. The parties proceeded to trial on the hostile work environment claim. On October 27, 2010, after a three-and-a-half day trial, a jury returned a verdict for Soleau and awarded her $100,000 for emotional distress and $6,700 in expenses. Soleau moves for an award of $367,277.50 in attorney's fees as a prevailing party under 42 U.S.C. § 2000e-5(k) and seeks $22,199.15 in nontaxable expenses.

### I. Attorney's Fees

Title VII authorizes a district court to award reasonable attorney's fees in its discretion to a prevailing plaintiff. 42 U.S.C. § 2000e-5(k); *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758–61 (1989). It is undisputed that Soleau prevailed on her hostile work environment claim and therefore is entitled to attorney's fees. The dispute is over the amount Soleau seeks for

1

six attorneys. Stephen McDaniel filed the case on her behalf. A few months into discovery, McDaniel enlisted the help of the law firm Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C. ("Ancel Glink"), which took the case to trial. Named partner Thomas DiCianni was McDaniel's initial contact and brought the case into the firm. Darcy Proctor, a partner, was lead counsel, and associate Brent Denzin was assigned to the case. David Lincoln Ader, of counsel to Ancel Glink, provided assistance, and associate Jim Rock read portions of a deposition into the record at trial.

N.D. Ill. Local Rule 54.3 establishes a procedure for parties to follow before a fee petition is filed. The parties must attempt in good faith to agree on the amount to be awarded. As a first step, Soleau is to provide upon request the attorneys' time and work records for which compensation is sought and the hourly rates each attorney will claim. N.D. Ill. Loc. R. 54.3(d)(1)–(2). If the parties cannot agree based on this information, IDOT is instructed to disclose its own billing information and the evidence it will use to contest Soleau's requested hours and rates. *Id.* 54.3(d)(5). After the exchange of information, the parties are to "*specifically* identify all hours, billings rates, or related nontaxable expenses (if any) that will and will not be objected to, the basis of any objections, and the *specific* hours, billing rates, and related nontaxable expenses that in the parties' respective views are reasonable and should be compensated." *Id.* 54.3 (emphasis added). If the remaining disputes are not resolved, the parties are required to prepare a joint statement identifying the points of dispute. *Id.* 54.3(e). The fee petition should be limited to the disputed issues. *Id.* 54.3(f). This process did not result in an agreement between IDOT and Soleau, so the fee petition was filed.

2

As a starting point for determining the amount of reasonable fees, courts use the "lodestar method," in which the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983); *Gastineau v. Wright*, 592 F.3d 747, 748–49 (7th Cir. 2010). The court may adjust the resulting amount upward or downward to reflect factors such as the difficulty, stakes, and outcome of the case. *Gastineau*, 592 F.3d at 748–49. Soleau bears the burden of submitting evidence that adequately documents the hours worked and the reasonableness of the requested rates. *Hensley*, 461 U.S. at 433.

### A. Reasonable Hourly Rates

A reasonable rate is the attorney's market rate. The best evidence is an attorney's actual billing rate for comparable work. *JeffBoat, LLC v. Director, Off. of Workers' Comp. Progs.*, 553 F.3d 487, 490 (7th Cir. 2009). If an attorney's actual rates are unavailable, the next best evidence is "the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation." *Muzikowski v. Paramont Pictures Corp.*, 477 F.3d 899, 909 (7th Cir. 2007). This information may be obtained either through affidavits from other attorneys disclosing their rates for similar cases or through rates courts have awarded in other fee petitions. Once a fee applicant presents sufficient evidence to establish the reasonableness of the rates, the burden shifts to the other side to present evidence that a lower rate is appropriate. *Gautreaux v. Chi. Housing Authority*, 491 F.3d 649, 559–60 (7th Cir. 2007). If a fee applicant does not meet the burden of proving each attorney's market rate, the court may make its own determination of a reasonable hourly fee. *Schlacher v. Law Office of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009).

The parties are far apart on what a reasonable hourly rate would be.

| Lawyer | Soleau's position | IDOT's position |
|---|---|---|
| David Lincoln Ader | $425 | $200 |
| Thomas G. DiCianni | $400 | $225 |
| Darcy L. Proctor | $375 | $300 |
| Brent Olson Denzin | $250 | $150 |
| Jim Rock | $175 | $0 |
| Stephen McDaniel | $250 | $150 |

In support of Soleau's requested rates, she (1) attaches affidavits from each of the attorneys (except Jim Rock) about his or her qualifications and experience, (2) cites a 2002 case in which a $350 hourly rate was approved for an attorney with experience allegedly similar to Darcy Proctor, the lead trial counsel, and (3) refers to the Laffey Matrix, a matrix prepared by the United States Attorney's Office for the District of Columbia listing reasonable hourly rates for attorneys of varying experience levels. She also argues her attorneys deserve a generous rate because of the contingent nature of their fees. However, courts have rejected awarding an enhanced rate based on the general risk of nonpayment, so this argument is disregarded. *See Blum v. Stenson*, 465 U.S. 886, 901 & n.17 (1984); *Elusta v. City of Chicago*, No. 06 C 4264, 2010 WL 5157333, at *2 (N.D. Ill. Dec. 13, 2010) (Coar, J.). IDOT contests the requested rates, arguing primarily that the rates are too high and unsupported by evidence.

Before turning to the analysis in depth, Jim Rock's requested fees are rejected out of hand. First, Soleau omitted an affidavit about Rock's qualifications and experience, leaving the court with no evidence to support a rate of $175. Soleau did not correct this oversight even though she later supplemented her initial memorandum with missing time sheets. Second, Rock billed eight hours for reviewing deposition transcripts and reading portions of those transcripts into the record at trial. The actual reading of the transcripts took minutes, so eight hours is

4

excessive. The time is also unnecessary. Often trial counsel or co-counsel—who are already present at trial—or an office employee reads deposition excerpts. If neither trial attorney could read the deposition, it was unnecessary for an attorney, as opposed to support staff who charge lower rates, to do so. *See Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999). Accordingly, Rock's requested fees are disallowed, and nothing more need be said about him.

As to the remaining attorneys, IDOT contends their actual billing rates on this case are available but not disclosed. IDOT points to a portion of Soleau's deposition in which she was asked whether she had a contingent or hourly fee arrangement. She testified she was charged by the hour. Def. Ex. B at p. 234:19–23. Soleau replies that her deposition statement was inaccurate and IDOT should have asked followup questions to clarify. Soleau provides her representation agreement with Ancel Glink, dated January 27, 2010, as proof that her lawyers worked on contingency. The deposition does not refute the contingency agreement because the questioning did not establish that Soleau, a nonlawyer, understood the difference between hourly and contingency billing. Soleau's attorneys are not required to supply nonexistent billing records.

Nevertheless, Soleau fails to provide sufficient evidence to support the requested rates. Although the affidavits are helpful in providing background information about the attorneys, they do not establish the reasonableness of the requested rates. Each affidavit states some variation of, "From his years of experience, both the time spent and billing rates in this case are reasonable for Title VII litigation." A conclusion that one's own rates are reasonable without providing actual comparison rates is not persuasive and will not be taken into account. *See Elusta*, 2010 WL 5157333, at *3 ("Saying that the rate is 'reasonable' without providing any concrete

examples, however, is of limited use"). None of the attorneys disclose the rates they charge other clients, nor do they claim such information is unavailable because, for example, they generally work on contingency or for a flat fee.

Soleau cites one case to support the reasonableness of the hourly rates requested. *Spina v. Forest Preserve District of Cook County*, No. 98 C 1393, 2002 WL 1770010, at *3–4 (N.D. Ill. July 31, 2002) (Keys, Mag. J.). She cites other cases for the reasonableness of the overall fee award, but that comes into play after the lodestar amount is calculated. In *Spina*, attorney Monica McFadden was allowed a rate of $325 an hour for out-of-court time and $350 an hour for in-court time after prevailing on both a Title VII and a § 1983 claim. To support this amount, McFadden submitted evidence of her "actual billing rate to clients, fees awarded to Ms. McFadden by other courts, [and] affidavits from attorneys attesting to their hourly billing rates." *Id.* at *2. The court acknowledged that McFadden's fewer years of experience could support a rate reduction, but concluded "her legal representation belongs in the same league as [the attorneys who submitted affidavits]" and her experience in electoral politics and as a government affairs representative before law school enhanced her legal experience. *Id.* Additionally, the court concluded McFadden deserved the requested rates because she achieved "unprecedented success" with a difficult case complicated by defendants' "high jinks." *Id.* at *4.

Soleau contends the attorney in *Spina* has experience comparable to lead attorney Darcy Proctor, and notes those rates were awarded nine years ago. The *Spina* case establishes that $325 or $350 an hour may be an appropriate hourly rate in some cases, but Soleau does not explain how the attorney in that case is comparable to Proctor. Proctor's affidavit states that she has been a practicing attorney in Illinois for 23 years and developed an expertise in "defending

6

governmental entities in various tort, civil rights, and employment litigation matters." Pl. Ex. 4, Proctor Aff. at ¶¶ 1, 6. But the court in *Spina* did not state how long the attorney had been practicing, and Proctor submitted no additional evidence about McFadden's qualifications. Nor was this case as remarkable as the court considered *Spina* to be.

Finally, Soleau relies on the Laffey Matrix to support the reasonableness of her requested rates. The Laffey Matrix is a table prepared by the United States Attorney's Office for the District of Columbia listing appropriate hourly rates for attorneys of varying experience levels to be used in awarding reasonable attorney's fees. *See* Laffey Matrix 2003–2010, http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited June 8, 2011). Soleau asserts the Laffey Matrix is a "well-established neutral source," is widely accepted by federal courts, and has been used in the Northern District of Illinois "routinely and repeatedly." Pl. Reply at p. 3. Soleau overstates the Laffey Matrix's acceptance in this district.[1] The Seventh Circuit has not addressed whether the Laffey Matrix is applicable, and judges in this district have split about whether and how it is relevant. *See Hadnott v. City of Chicago*, No. 07 C 6754, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010) (Schenkier, Mag. J.) (collecting cases).

Even the cases Soleau cites do not all rely solely on the Laffey Matrix as the only evidence of reasonable rates. *See, e.g., Pickett v. Sheridan Health Care Ctr.*, No. 07 C 1722, 2011 WL 1219294, at *5 (N.D. Ill. Mar. 29, 2011) (Pallmeyer, J.) (considering Laffey Matrix, previous fee awarded to attorney, and affidavits from other attorneys); *Warfield v. City of*

---

[1] Soleau's overstatements in her reply brief are not limited to her comments about the Laffey Matrix. She requested and was granted leave to file an oversized brief of 16 pages instead of the normal 15 pages. However, her reply could have been cut down to 15 pages if she had eliminated the unnecessary adjectives and adverbs and taken out the hyperbolic potshots against IDOT.

7

*Chicago*, 733 F. Supp. 2d 950, 960 (N.D. Ill. 2010) (Castillo, J.) (considering billing records, affidavits, articles, and Laffey Matrix); *In re Trans Union Corp. Privacy Litigation*, No. 00 C 4729, 2009 WL 4799954, at *19 (N.D. Ill. 2009) (Gettleman, J.) (using Laffey Matrix as a reference point in multi-district litigation and was "merely looking to the lodestar as a cross-check against the market-mimicking application of a percentage recovery, and not rigorously examining the hours and rates and each of the dozens of counsel from across the country"); *Catalan v. RBC Mortgage Co.*, No. 05 C 6920, 2009 WL 2986122, at *6 (N.D. Ill. Sept. 16, 2009) (Dow, J.) (considering Laffey Matrix in addition to prior fee awards to attorney); *Decker v. Transworld Sys., Inc.*, No. 09 C 50073, 2009 WL 2916819, at *5 (N.D. Ill. Sept. 1, 2009) (Mahoney, Mag. J.) (considering the 2007 Consumer Law Attorney Fee Survey, affidavits from other consumer law attorneys, and Laffey Matrix). Instead, the Laffey Matrix was considered along with other evidence. One case relied solely on the Laffey Matrix in awarding attorney's fees as a sanction because the attorney was paid a flat monthly fee, not hourly, and did whatever legal work its client required. *Berg v. Culhane*, No. 09 C 5803, 2011 WL 589631, at *3 (N.D. Ill. Feb. 10, 2011) (Kendall, J.). The remaining case, *Hadnott*, 2010 WL 1499473, is insufficient to establish the Laffey Matrix has come to replace the traditional methods of proof in the Northern District of Illinois. Soleau has not stated that other methods of proof are unavailable. The court sees no reason to disregard the longstanding rule that looks first to the attorney's actual rates, then to the rates charged by comparable attorneys in the same geographic area. *See Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743-44 (7th Cir. 2003) ("In statutory fee shifting cases, the Seventh Circuit presumes that the attorney's actual billing rate, rather than a local forum market billing rate, applies, although a court has some discretion to use

8

forum rates in some circumstances, such as where an attorney (like Ms. Wheelahan, whose practice is entirely contingent) is unable to provide evidence of actual billing rates"). The Laffey Matrix may be one factor in a rate inquiry, but may not be the only factor unless the fee applicant explains why it is necessary.

Therefore, Soleau has not met her burden of providing evidence of her attorneys' reasonable rates. She does not explain why Proctor is comparable to the attorney in *Spina*, and she has not explained why it is necessary to resort to the Laffey Matrix over other available evidence. The court, therefore, may determine the reasonable rates.

The court finds a reasonable rate for Proctor, an attorney with 23 years' experience with a specialty in employment litigation, is $350 an hour. *See Williams v. Z.D. Masonry, Corp.*, No. 07 C 6207, 2009 WL 383614, at *2 (N.D. Ill. Feb. 17, 2009) (Brown, Mag. J.) (finding rates between $350 to $400 reasonable for attorney with more than 20 years experience in labor and employment law). Using Proctor's rate as a benchmark, the court finds a reasonable rate for DiCianni is $375 and for Ader, $400, to reflect their greater years of experience (30 and 43 years, respectively). Denzin has been a practicing attorney for five years, but practiced employment litigation only since joining Ancel Glink three years ago. A reasonable hourly rate for Denzin is $190. *See O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 838–89 (N.D. Ill. 2007) (Cole, Mag. J.) (reducing fourth-year associate's request of $250 an hour to $190 in racial discrimination and retaliation case); *see also Elusta v. City of Chicago*, No. 06 C 4264, 2010 WL 5157333, at *2–4 (N.D. Ill. 2010) (Coar, J.) (after plaintiff prevailed on excessive force claim, awarding $225 an hour to attorney who had been practicing for 16 years but did not specialize in civil rights suit). Both Soleau and IDOT suggest McDaniel's rate should be equal to that of

9

Denzin (although they dispute what that rate is). Accordingly, McDaniel is awarded $190. Although he has been practicing for 27 years, he does not specialize in employment litigation and is based in Wheaton, Illinois, where presumably the market rates are lower.

## B. Reasonable Hours Expended

The next element of the lodestar calculation is the number of hours reasonably expended on the case.[2] The parties are similarly far apart on the number of hours.

| Lawyer | Soleau's position | IDOT's position |
|---|---|---|
| David Lincoln Ader | 91.25 | 18.25 |
| Thomas G. DiCianni | 13.10 | 3.85 |
| Darcy L. Proctor | 329.75 | 217.65 |
| Brent Olson Denzin | 627.50 | 473.25 |
| Stephen McDaniel | 165.3 | 57.85 |

IDOT groups its objections in several categories: vague entries, unrelated matters, unsuccessful matters, excessive time, duplicative time, and noncompensable time. Some of the objections can be dealt with generally.

### 1. Workers' Compensation

IDOT argues Soleau may not recover for time spent on a possible workers' compensation claim. Soleau does not dispute this, as some but not all of the entries relating to workers' compensation were stricken. Accordingly, the following entries are stricken: Ader 9, 23; Proctor 14, 67, 69 (reduced to 0.5), 72, 76, 78.

---

[2] Soleau submitted her attorney's time sheets, which consist of hundreds of entries, separated by attorney and containing the date, number of hours, and description of the task performed. For ease of reference, the court numbered each attorney's entries sequentially and will refer to a particular entry by attorney name and entry number. For example, "Ader 83" refers to the last entry of page 8 of plaintiff's exhibit 2, defendant's exhibit F. The court counts a total of 362 entries for Darcy Proctor, 17 for Thomas DiCianni, 109 for David Ader, 149 for Brett Denzin, and 102 for Stephen McDaniel.

## 2. Unsuccessful Claims

IDOT argues the time entries relating to claims that were abandoned or decided adversely to Soleau should be stricken. Soleau's complaint alleged a hostile work environment, disparate treatment, and retaliation. She proceeded to trial on only the hostile work environment claim, having abandoned the disparate treatment claim and lost the retaliation claim at summary judgment. IDOT requests the entries relating to the unsuccessful claims and the entries in which the attorney did not specify which aspect of the case he or she was working on be stricken.

Whether an attorney may bill for unsuccessful claims depends on whether these claims were "distinct in all respect from [the] successful claims." *Hensley*, 461 U.S. at 440. Unsuccessful claims are unrelated if they are based on different facts and legal theories than the successful ones. *Spanish Action Comm. of Chi. v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir. 1987). If the unsuccessful claims are related to the successful ones, the time entries are compensable, but the overall award may be adjusted downward to account for the limited success. *Id.*

The claims here are related because they involve a common core of facts. The hostile work environment claim was based on incidents with two coworkers and IDOT's response to those incidents. Soleau's response to the summary judgment motion demonstrates the retaliation claim is related. She identifies the protected activity as filing a sexual harassment complaint against one of her coworkers with the EEOC and the retaliatory action as withholding the recommended discipline against the coworker. *See* Dkt. No. 40 at pp. 17–18. Even though this theory was unsuccessful, it is still related to the hostile work environment claim; work on both claims is overlapping and cannot be easily segregated. Moreover, the disparate treatment claim

11

is related to the hostile work environment claim. As IDOT noted in its motion for summary judgment, "the acts alleged to be discriminatory are entirely duplicative of those alleged to constitute a hostile work environment." Dkt. No. 35 at p. 15. Therefore, the claims are related, and plaintiff's limited success is considered at a later point in the analysis.

### 3. Duplicative Entries

Four Ancel Glink attorneys were staffed on this case, and Stephen McDaniel, the attorney who represented plaintiff in the beginning, continued to bill after bringing Ancel Glink into the case. This number of attorneys raises a question whether the case was overstaffed and the lawyers duplicated each others' efforts. *See DeBartolo v. Health & Welfare Dep't*, No. 09 C 0039, 2011 WL 1131110, at *9–10 (N.D. Ill. Mar. 28, 2011) (Valdez, Mag. J.). IDOT marked the time entries it believes are duplicative with a "D." This approach is largely unhelpful because IDOT does not explain what each entry is duplicative of, leaving the court to guess as to the basis for the objection. However, IDOT does make some specific arguments in its memorandum about certain categories of allegedly duplicative work. Those are addressed first, and then the remaining objections are considered.

IDOT contends it was unnecessary for plaintiff to have two or three attorneys attend each deposition and argues only the attorney who conducted the deposition should receive credit for attending. Whether more than one attorney is necessary at a deposition depends on the complexity of the case. *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 525 (7th Cir. 1995); *Robinson v. City of Harvey*, No. 00 C 3696, 2004 WL 2033714, at *2–3 (N.D. Ill. Aug. 13, 2004) (Plunkett, J.). Soleau does not explain why two attorneys were necessary, relying instead on there being at least two attorneys present for IDOT (generally an attorney from

12

the Illinois Attorney General's Office, which conducted the litigation, and counsel for IDOT). However, this case was not complex. The incidents of sexual harassment were largely uncontested as were the facts concerning IDOT's response. The main disputes were about Soleau's interaction with another employee a year later, the reasonableness of IDOT's remedial measures, and the reasonableness of Soleau's subjective reactions. As a marker of the case's non-complexity, ten depositions were taken over a period of five days; the longest was half a day; the shortest was half an hour. Therefore, this objection is sustained. Denzin receives credit for attendance at all of the depositions except Soleau's, for which Proctor receives credit. Soleau has not given a good reason why McDaniel's presence at her deposition was reasonably necessary, and his time for attending is disallowed. Furthermore, while strategizing between Proctor and Denzin is permissible, Proctor will not get credit for preparation work geared towards the depositions she did not conduct and vice versa. Accordingly, the following are stricken: Proctor 83–85, 87–89, 91–92, 107, 283; Denzin 26 (reduced by 3 hours), 29, 30 (reduced by 8 hours); McDaniel 69–70.

IDOT contends much of DiCianni's time is duplicative. DiCianni is the attorney who brought the client into the firm. IDOT argues once the case was assigned to Proctor, DiCianni merely reviewed filings but did not meet or strategize with any attorneys. IDOT contends in the joint statement that only 3.85 hours are appropriate for DiCianni. But it is unclear which of DiCianni's entries make up the 3.85 hours because IDOT marks all his entries with a "D" except one two-hour entry. That problem aside, the objection is largely sustained. Soleau contends DiCianni was consulted on occasion for his thoughts, revisions on final legal briefs, and legal strategy. Soleau contends it is typical for attorneys to collaborate on cases. However, beyond the

13

initial client contact, DiCianni's time entries are generally insufficient to demonstrate that his involvement was reasonably necessary. DiCianni may bill for entries 1–4 (initial case matters), 10–11 (trial strategy with Proctor) and 13 (entry regarding the fee petition), for a total of 6.75 hours.

IDOT similarly objects to Ader's time as unnecessarily duplicative. Soleau contends Ader's involvement was similar to DiCianni's—a knowledgeable senior attorney to advise on overall strategy and final briefs. However, it is unclear from Ader's time sheet whether his work duplicated or enhanced Proctor's work, and a paying client would reasonably expect more justification for hours billed by an expensive attorney who was only marginally involved with the case. In the joint statement, IDOT contends 18.25 hours was a reasonable amount for Ader to bill. But in its response to Soleau's fee petition, it objects to every single one of Ader's time entries as either vague or duplicative or both. This approach is unhelpful. Local Rule 54.3(e) instructs the parties to present only contested issues to the court, not to raise new objections. The court therefore allows 18.25 hours for Ader.

IDOT argues nearly all of McDaniel's time after Ancel Glink became involved is duplicative because he relinquished primary responsibility over the case. Soleau contends his "presence at strategy meetings was necessary to provide continuity and relay issues that were not clearly explained by Ms. Soleau, a Polish immigrant with limited English." Pl. Reply at p. 10. Although some continued involvement from McDaniel is reasonable, given his familiarity with the case from the beginning, the trial attorneys should have been up to speed by the time of summary judgment. All of IDOT's duplicative objections after the summary judgment motion are sustained. Accordingly, the court strikes McDaniel 79, 82–83, 85–87, 89–93, 95, 97, 99–102.

14

The remaining objections based on duplication concern Proctor and Denzin. Again, IDOT's objections are unhelpful because it does not point out what a particular entry might duplicate, and a close examination of the time sheets reveals that IDOT objected to *every* entry that refers to the same event, denying even one attorney credit for that activity. It is reasonable for a partner and an associate to staff the case, and this arrangement will result in some overlap between the two attorneys, but that overlap is not unreasonable. The time sheets demonstrate that generally, Proctor reviewed Denzin's work. Denzin's time sheet shows substantially more hours on a particular task, and Proctor's tend to be less than an hour. Therefore, the remaining duplication objections are overruled.

### 4. Vague Entries

IDOT objects to several entries for vagueness. The detail required for time entries is not a fixed standard but rather "the level of detail paying clients find satisfactory." *Delgado v. Mak*, No. 06 C 3757, 2009 WL 211862, at *4 (N.D. Ill. Jan. 29, 2009) (Dow, J.) (internal quotation marks omitted). What is generally acceptable is a description of "the tasks performed, the people involved, and a general statement of the topic of conversation or review." *Clark v. Oakhill Condominium Ass'n, Inc.*, No. 3:08-CV-283 RM, 2011 WL 1296719, at *8 (N.D. Ind. Mar. 31, 2011) (Miller, J.). However, attorneys need not divulge every detail of their work. *Delgado*, 2009 WL 211862, at *4; *see Hensley*, 461 U.S. at 437 n. 12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures"). Each entry should be considered in context of the surrounding entries. *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985).

Because the time sheets for all the attorneys except McDaniel, Proctor, and Denzin have been addressed, only the vagueness objections for their time sheets need be discussed. IDOT specifically objected to an entry in which McDaniel billed for reviewing discovery responses and documents from IDOT before the case was filed. Soleau did not explain this entry in her reply, so the objection is sustained. McDaniel 22 is stricken. All remaining vagueness objections as to McDaniel's time sheet are overruled. IDOT objects to time entries stating, "P/C w/client." However, a paying client would not necessarily need more information because the client was involved, and there were not an inordinate number of phone calls. The same goes for letters and meetings with Soleau. The letters and phone calls to people other than Soleau are sufficiently specific because the surrounding context makes the purpose of the contact clear. For example, after McDaniel's initial meeting with Soleau, he billed for "Letter sent to IL Dept. Human Rights (IL DHR)." McDaniel 2. The context implies the letter pertained to the necessary charge Soleau must file with that department before filing suit. The amount of time billed for each disputed entry appears reasonable.

IDOT objects to Proctor's time sheet entries that state only, "Review and work on trial preparation planning and related matters," or some variation, without identifying which aspect of the case she was working on. Proctor 209–11, 213, 216, 220, 256–57. The case IDOT cites is not directly on point. In *DuPuy v. McEwen*, 648 F. Supp. 2d 1007, 1025 (N.D. Ill. 2009), the court disapproved of a paralegal's block billing of 35 hours per week for "trial prep." The court found that the paralegal's practice of weekly, as opposed to daily, billing and "the vague entry of 'trial prep' open[ed] the door for errors in memory and faulty estimates [the paralegal] might have made in his own favor." *Id.* The court, therefore, reduced the amount of hours by half,

16

reasoning that plaintiffs bore the risk of billing mistakes. *Id.* Here, Proctor billed daily, so the risk of errors in memory is absent, and she did not block bill for the time. Instead, she billed for times ranging from 0.5 to 1.5 hours. Taken in context, these entries are sufficient.

The court has reviewed the remaining objections for vagueness and finds the entries sufficient.

### 5. Excessive Time

IDOT objects to several entries as excessive. The court agrees as to Proctor 7 and 18 and strikes those entries. The court reduces the entries for Proctor 17 and 22 to 0.1 hour and for McDaniel 32 to 0.25 hour. The remaining objections for excessiveness are overruled.

### 6. Time Not Compensable

IDOT argues one of McDaniel's entries is not compensable as a clerical or ministerial task. McDaniel bills 0.5 hours for "Notices sent to IDOT." Time spent on "tasks that are easily delegable to non-professional assistance" may be excluded by the court. *Spegon*, 175 F.3d at 553. There is no explanation why it was necessary to spend 30 minutes to mail IDOT notice of a motion, when IDOT receives electronic notification. McDaniel 37 is disallowed.

### 7. Unclear Objections

IDOT labels several of McDaniel's entries with a "U," but does not explain what the "U" stands for. These are overruled.

## C. Lodestar Amount & Adjustment

In sum, the following rates and hours determine the lodestar amount:

| Lawyer | Rate | Hours | Total |
|---|---|---|---|
| David Lincoln Ader | $400 | 18.25 | $ 7,300.00 |
| Thomas G. DiCianni | $375 | 6.75 | $ 2,531.25 |
| Darcy L. Proctor | $350 | 304.7 | $106,645.00 |
| Brent Olson Denzin | $190 | 617.0 | $117,230.00 |
| Stephen McDaniel | $190 | 111.75 | $ 21,232.50 |
| Jim Rock | $0 | 0.0 | $ 0.00 |
| | | | $254,938.75 |

This amount may be adjusted to take into account Soleau's limited success. *Farrar v. Hobby*, 506 U.S. 103, 114–115 (1992) (noting degree of success obtained is "the most critical factor"). Soleau prevailed on only one of the claims brought in her complaint and did not receive all the damages she requested at trial. She requested $250,000 for emotional distress, $6,700 for past therapy costs, and an unspecified amount for future therapy costs. The jury awarded her $100,000 for emotional distress and $6,700 for expenses.

The court reduces the award by 20% to $203,951 to account for Soleau's limited but significant success. IDOT's request that the award be reduced by 60% is too extreme; the three claims are so closely related that dividing the case by thirds would undercompensate Soleau's attorneys. Although not particularly complex or novel, this was a hard-fought case. Soleau's attorneys dedicated substantial resources to this case and did an admirable job representing their client, including an especially well written summary judgment response. The contentious nature of the case is demonstrated by the fee petition pleadings, and permeated the entire litigation. A reduction of 20% sufficiently accounts for Soleau's lack of total victory while not resulting in an excessive fee award in relation to damages.

18

## II. Nontaxable Expenses

Soleau seeks an award of $22,199.15 in expenses. The request includes costs for delivery fees, deposition transcript costs, Westlaw research, photocopies and other duplication. To be reimbursable, an expense must fall under 28 U.S.C. § 1920 or be included as part of an attorney's fee. *Heiar v. Crawford County*, 746 F.2d 1190, 1203–04 (7th Cir. 1984). An attorney's fee includes reasonable expenses of litigation, other than statutory costs, including postage, long-distance calls, copying, travel, and computerized legal research. *Id.*; *Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 38 F.3d 1429, 1440 (7th Cir. 1994). Regardless how a fee is characterized, Soleau must demonstrate the amount requested is reasonable. *Davis v. Budz*, No. 99 C 3009, 2011 WL 1303477, at *8 (N.D. Ill. Mar. 31, 2011) (Pallmeyer, J.). This includes some indication of what was delivered to whom and why, what was copied, and the purpose of the legal research. *Id.* at *8; *Robinson*, 2004 WL 2033714, at *8.

IDOT objects to all Soleau's proposed costs except the deposition fees because the costs are insufficiently documented. Soleau attaches the firm's billing records, listing the dates expenses were incurred and the general nature of the costs, such as messenger service, photocopies, or Westlaw research. The information provided does not allow the court to assess whether the costs are reasonable. Soleau did not fill in the gaps in her reply. The costs other than the unopposed deposition costs are denied. Soleau may recover $4,353.17.

## III. IDOT'S Request for Reimbursement

Soleau moved for leave to file a reply after IDOT filed its objections, stating that IDOT did not disclose the specific basis for its objections during the Local Rule 54.3 negotiations and so she had no opportunity to respond. IDOT opposed the motion and took offense at the

19

implication that it did not fulfill its duties under Local Rule 54.3. IDOT provided email correspondence and phone records, showing it did in fact communicate with Soleau as required. IDOT seeks reimbursement for $75 incurred in obtaining the phone records. The court declines to get involved in whether both sides complied with the Local Rule 54.3 obligations. Soleau's request to file a reply was reasonable, and telephone records were not necessary to IDOT's opposition. IDOT's reimbursement request is denied.

## IV. Conclusion

Soleau is awarded $203,951 in attorneys fees and $4,353.17 in related expenses.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

June 9, 2011